## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| PING WANG, EMILY LEHNES, EMILY RAMOS, JENNIFER KILKUS, and JOHN DOE, on behalf of himself and all others similarly situated, | |
| Plaintiffs, | |
| v. | Civil Action No.: 5:23-cv-00193-TES |
| THE CORPORATION OF MERCER UNIVERSITY, | |
| Defendant. | |

## PLAINTIFFS' UNOPPOSED MOTION
## FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs Ping Wang, Emily Lehnes, Emily Ramos, Jennifer Kilkus, and John Doe (collectively "Plaintiffs") respectfully move the Court for an order: (i) preliminarily certifying the proposed Settlement Class; (ii) preliminarily approving the proposed Settlement; (iii) approving the proposed notice plan; (iv) ordering notice of the Settlement be issued to the Settlement Class; and (v) setting a date for the final approval hearing. Defendant The Corporation of Mercer University ("Defendant," "Mercer University," or "Mercer") does not oppose the relief sought herein.

### I.    INTRODUCTION

Plaintiffs respectfully present to the Court a proposed class action settlement[1] for preliminary

---

[1] The Settlement Agreement ("SA" or "Agreement") is attached as **Exhibit 1** to the Joint Declaration of Counsel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Joint Decl.") (filed contemporaneously herewith). Capitalized terms used herein shall have the same meaning ascribed to them in the Settlement Agreement.

approval. In exchange for a release of liability arising from the Data Incident described in the operative complaint, Mercer University, agreed to establish an uncapped claims-made fund for the benefit of the proposed Settlement Class—meaning, Mercer University must pay all verified, valid, and timely claims in full.

There are many meaningful benefits available to Settlement Class Members under the Settlement Agreement. All Settlement Class Members may submit claims for: (i) up to $450.00 for Ordinary Out-of-Pocket Losses and Lost Time spent responding to the Data Security Incident (capped at five (5) hours at $20.00 per hour); (ii) up to $5,500.00 in Extraordinary Out-of-Pocket Losses arising from identity theft and fraud stemming from the Data Incident; and (iii) two (2) years of three-bureau credit monitoring services and identity theft insurance. Furthermore, Defendant will implement and maintain certain data security-related measures to protect Class Members' personally identifiable information ("PII"). The cost of these data security-related measures is estimated at $800,000.00 and is paid for by Defendant completely separate and apart from the Settlement. Finally, Defendant will pay all notice and claims administration costs, as well as any Court approved attorneys' fees, costs, and expenses up to a total of $300,000, completely separate and apart from the Settlement. These are significant benefits that directly address and remedy the harm claimed by Plaintiffs and the Settlement Class.

Therefore, for the reasons set forth below, the Court should preliminarily approve the proposed Settlement because it is fair, reasonable, and adequate and will provide Settlement Class Members with guaranteed relief without the risk or delay of further protracted litigation.

4895-9481-9064.1

## II.    BACKGROUND[2]

Defendant Mercer University is a private research university that enrolls over 9,000 students in twelve colleges and schools. (Consolidated Class Action Compl. ("Compl."), ¶ 1, ECF No. 16). Between February 12, 2023, and February 24, 2023, an unauthorized actor gained access to Mercer University's systems during a ransomware attack. (*Id.* ¶ 4). Plaintiffs allege that the PII of current and former Mercer University students and employees, including their names, social security numbers, driver's license numbers were exfiltrated during the Breach. (*Id.* ¶ 5).

On May 31, 2023, Plaintiffs began filing separate class action lawsuits against Mercer based on the Data Incident. On October 3, 2023, Plaintiffs filed a consolidated putative class action complaint against Mercer in the United Stated District Court for the Middle District of Georgia, asserting claims of negligence, unjust enrichment, breach of implied contract, violations of the Georgia Security Breach Notification Act, O.C.G.A. § 10-1-912 *et seq.*, and Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.*, and declaratory judgment (the "Litigation"). (*See generally, id.*).

On November 2, 2023, Mercer filed a motion to dismiss the Consolidated Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF Nos. 21 and 22). The Parties completed briefing the motion to dismiss on December 27, 2023. (ECF Nos. 25 and 29). While the Motion to Dismiss was pending, the Parties agreed to attend mediation. Mercer also responded to Plaintiffs' requests for documents and information pursuant to Federal Rule of Evidence 408 to facilitate mediation.

---

[2] The facts in this section are those set forth in the consolidated class action complaint. Defendant makes no admission as to the facts alleged in the consolidated class action complaint, and Defendant reserves its right to challenge the alleged facts should the Court deny this Motion, in whole or in part.

On May 20, 2024, the Parties participated in a full-day mediation before JAMS mediator Bruce A. Friedman. The Parties were unable to come to an agreement. Following the mediation, the Parties continued arms-length negotiations with the assistance of Mr. Friedman.

On June 6, 2024, Mr. Friedman presented a mediator's proposal, which the Parties thoroughly considered and subsequently accepted, the salient terms of which were memorialized in a term sheet signed by the Parties on July 31, 2024. The full terms of the Parties' agreement are memorialized in the Settlement Agreement and attached exhibits.

## III.    SUMMARY OF SETTLEMENT TERMS

### A.  Proposed Settlement Class.

The proposed Settlement Class is defined as follows:

> All persons who were notified that their information may have been impacted in the Data Incident excluding: (i) Mercer and its respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge and/or magistrate assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Incident or who pleads *nolo contender* to any such charge.

(SA § 1.27).

### B.  Settlement Benefits.

The settlement secures meaningful relief for the Settlement Class. Significantly, the Settlement does not cap Mercer University's total monetary contribution, which means every timely, verified, and valid claim will be paid in full. (*See generally*, *id*. § 2).

First, all Settlement Class Members are eligible to receive two (2) years of three-bureau credit monitoring and identity theft protection services upon submission of a valid claim. (*Id.* § 2.1.3). The monitoring will include, at minimum, the following features: (i) dark web scanning with immediate user notification if potentially unauthorized use of a Class member's personal

4

information is detected; (ii) identity theft insurance; (iii) real-time credit monitoring with Equifax, Experian, or TransUnion; and (iv) access to fraud resolution agents as described above. (*Id.*)

Second, all Settlement Class Members may submit a claim for Ordinary Out-of-Pocket Losses and Attested Time up to $450.00 per individual. (*Id*. § 2.1.1). For Attested Time, Settlement Class Members may submit a claim for up to five (5) hours of time spent remedying issues related to the Data Incident at a rate of $20.00 per hour by providing an attestation and a written (narrative) description of (1) the actions taken in response to the Data Incident, and (2) the time associated with those actions. (*Id.*).

Third, Settlement Class Members may also submit a claim for up to $5,500.00 per individual for Extraordinary Out-of-Pocket Losses that are more likely than not directly arising from identity theft or other fraud perpetrated against the Settlement Class Member as a result of the Data Incident. (*Id*. § 2.1.2).

Lastly, Mercer has implemented and will maintain certain reasonable data security-related measures as has been identified. (*Id*. § 2.1.4). Costs associated with these business practice commitments are paid by Mercer completely separate and apart from other Settlement Benefits. (*Id.*). The costs of the changes made by Defendant are approximately $800,000.00. (*Id.*). Mercer will continue to invest in and maintain reasonable data security-related measures for the next two (2) years. (*Id.*).

**C. Scope of Release.**

All Settlement Class Members who do not opt-out will release all claims that are "relating to, concerning or arising out of the Data Incident." (*Id*. § 1.21). This is a standard release, covering only those claims that were, or could have been, brought in this Action.

### D.  Attorneys' Fees, Costs, and Expenses.

Plaintiffs will move the Court for an Order awarding reasonable Attorneys' Fees, costs, and expenses in an amount not to exceed $300,000. (*Id.* § 7.2). Any Court awarded Attorneys' Fees, costs, expenses will not impact the relief made available to Settlement Class Members under the Settlement.

### E.  Notice and Claims Administration.

The Parties retained Epiq, a well-known class action settlement administrator, to serve as Claims Administrator. (*Id.* § 1.25). Epiq will be responsible for administering the notice and claims program. (*Id.*).

The Settlement includes a robust notice program. Defendant will provide Epiq, to the extent available, the name and last known physical address of each Settlement Class Member. (*Id.* § 9.1). Epiq will use that information to send the Postcard Notice forms to Settlement Class Members. (*Id.* at Exhibit C (Postcard Notices)). Epiq will also establish a settlement website, which will contain the notice forms, claim forms, and other information that will assist Settlement Class Members in understanding the proposed Settlement. (*Id.* at Exhibit A (Claim Form) and Exhibit B (Long Form Notice)).

## IV.   LEGAL STANDARD

Class actions may only be settled on a class wide basis with court approval. Fed. R. Civ. P. 23(e). "Preliminary approval—as the parties request here—is the first step in the settlement process." *Morris v. United States Foods, Inc.*, 2021 U.S. Dist. LEXIS 131647, *18 (M.D. Fla. May 17, 2021). "At this preliminary stage, the Court must determine whether it 'will likely be able to' 1) certify the class for purposes of judgment on the proposed settlement; and 2) approve the settlement proposal under Rule 23(e)(2)." *Navarro v. Fla. Inst. of Tech., Inc.*, 2024 U.S. Dist.

LEXIS 109048, *4 (M.D. Fla. June 20, 2024) (quoting Fed. R. Civ. P. 23(e)(1)(B)). If both requirements are satisfied, the Court should direct notice to the proposed class and schedule a fairness hearing. *See id.*

## V.    ARGUMENT

### A.  The Court Should Provisionally Certify the Proposed Settlement Class.

Before the Court may preliminarily approve the settlement, it must find that it will "likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class— *i.e.*, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011). In this case, the Court will be able to certify the proposed class for settlement purposes under Rule 23(a) and (b)(3).

### B.  All Requirements of Rule 23(a) are Satisfied.

"Four elements are required for a class to be certified under Rule 23(a) of the FRCP: numerosity, commonality, typicality, and adequacy of counsel." *Hines v. Widnall*, 334 F.3d 1253, 1255-56 (11th Cir. 2003). Each element is satisfied here.

#### 1.  Rule 23(a)(1)'s Numerosity Requirement is Satisfied.

Numerosity is satisfied because "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While 'mere allegations of numerosity are insufficient,' Rule 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp.*, LLC, 289 F.R.D. 674,

7

684 (S.D. Fla. 2013) (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009)). The "general rule of thumb in the Eleventh Circuit is that 'less than twenty-one is inadequate, more than forty [is] adequate, with numbers between varying according to other factors.'" *Id.* (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). In this case, there are approximately 93,512 Settlement Class Members, which is far too many for individual joinder. Therefore, numerosity is satisfied.

### 2.    Rule 23(a)(2)'s Commonality Requirement is Satisfied.

Commonality is satisfied because this case presents "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Common questions are ones where the same evidence will suffice for each member, and individual questions are ones where the evidence will vary from member to member." *Sellers v. Rushmore Loan Mgmt. Servs.*, 941 F.3d 1031, 1040 (11th Cir. 2019) (quoting *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016)). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

Here, the central question raised by the litigation is whether Defendant took reasonable steps to protect the PII of Class Members. That issue depends on the acts and omissions of Defendant, rather than facts particular to any one class member, and thus is a question common to the class. *See In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *179 (N.D. Ga. Mar. 17, 2020) (*In re Home Depot Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 U.S. Dist. LEXIS 200113, at *29 (N.D. Ga. Aug. 23, 2016)) (finding that multiple common issues center on the defendant's conduct, satisfying the commonality requirement); *Hashem v. Bosley, Inc.*, 2022 U.S. Dist. LEXIS 119454, at *7 (C.D. Cal. Feb. 22, 2022) (finding commonality where "Plaintiffs maintain that there are multiple common question

of law or fact—i.e., whether Defendant breached its duty to safeguard the Class's PII, whether Defendant unreasonably delayed in notifying the Class about the data breach, and whether Defendant's security measures or lack thereof violated various statutory provisions."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 129939, at *22 (N.D. Cal. July 20, 2020) (finding commonality in a data breach case, as "[i]n the case's current posture, whether Yahoo employed sufficient security measures to protect the Settlement Class Members' Personal Information from the Data Breaches lies at the heart of every claim."); *Sung v. Schurman Fine Papers*, 2018 U.S. Dist. LEXIS 40379, at *9–10 (N.D. Cal. Mar. 11, 2018) (finding commonality in a data breach case where "[t]he lawsuit involves a single data breach"). Therefore, commonality is satisfied.

### 3. Rule 23(a)(3)'s Typicality Requirement is Satisfied.

Typicality is satisfied because the "claims or defenses" of the named Plaintiffs "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality element "focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Industries, Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001) (citation omitted). "[T]he typicality requirement is permissive: representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 674 (citation omitted).

As with commonality, typicality is routinely met in data breach cases, as both the class representative and the other members of the class were subject to the same event that gives rise the claims in the case, and thus subject to the same consequences of the allegedly improper data protection. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020

WL 4212811, at *3 (N.D. Cal. July 22, 2020), *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) ("the Settlement Class Representatives, like the Settlement Class as a whole, were all Yahoo users who allegedly either suffered identity theft and/or were placed at substantial risk for identity theft. Accordingly, Yahoo's allegedly inadequate data security harmed the Settlement Class Representatives in a common way as the rest of the Settlement Class Members."). Similarly, Plaintiffs' claims here are the same as those of the other members of the Class, as they stem from the same incident and are the result of the same alleged action (or lack of action) on the part of Defendant. Typicality is satisfied.

### 4.    Rule 23(a)(4)'s Adequacy Requirement is Satisfied.

Adequacy is satisfied because Plaintiffs and their counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether adequacy is satisfied, courts ask two questions: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021). Both prongs are satisfied here. First, there is no conflict of interest between Plaintiffs and the Class. As discussed above, Plaintiffs' claims arise from the same course of conduct and are based on the same legal theories as the claims of the absent class members, so their interests are aligned. *See Luczak v. Nat'l Bev. Corp.*, 548 F. Supp. 3d 1256, 1268 (S.D. Fla. 2021) (noting that the typicality and adequacy analyses under Rule 23(a) tend to merge"). Second, Plaintiffs vigorously prosecuted this case through their legal counsel, including by litigating Defendant's motion to dismiss, conducting factual investigations of the data breach, and participating in mediation. (Joint Decl. ¶¶ 7–9, 13–14). Therefore, the class has been adequately represented at all times.

### C.  Rule 23(b)(3) is Also Satisfied.

"Rule 23(b)(3) has two elements: (1) predominance and (2) superiority." *Nuwer v. FCA U.S. LLC*, 343 F.R.D. 638, 652 (S.D. Fla. 2022). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). Both elements are satisfied here.

### 1.  Common Questions Predominate.

Predominance is satisfied because "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Owens v. Metro. Life Ins. Co.*, 323 F.R.D. 411, 419 (N.D. Ga. 2017) (quoting *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009)). If "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) (quotation omitted).

Here, predominance is satisfied because "Plaintiffs' case for liability depends, first and foremost, on whether [Defendant] used reasonable data security to protect Plaintiffs' personal information." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018). As a result, "the focus" of this case is "on the extent and sufficiency of the specific security measures that [Defendant] employed," which presents "the precise type of predominant question that makes

class-wide adjudication worthwhile." *Id.* Therefore, predominance is satisfied. *See In re Yahoo!,* 2020 U.S. Dist. LEXIS 129939, at *37–38 (applying same reasoning as *Anthem*).

### 2. A Class Action is Superior to Individual Adjudication.

Superiority is satisfied because "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The inquiry focuses 'not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Andreas-Moses v. Hartford Fire Ins. Co.*, 326 F.R.D. 309, 319 (M.D. Fla. 2018) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004)). The following factors are relevant to superiority: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

In data breach cases, individual damages tend to be small, and litigation costs tend to be expensive. *See In re Yahoo!*, 2020 U.S. Dist. LEXIS 129939, *40 ("[T]he amount at stake for individual Settlement Class Members is too small to bear the risks and costs of litigating a separate action. Litigation costs would be quite high, given that the case involves complex technical issues and requires substantial expert testimony."); *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017) (describing "the ways in which the high likelihood of a low per-class-member recovery militates in favor of class adjudication"). Moreover, even if Class Members were to individually pursue their claims, the efficiency gained by having a single resolution of all the

common issues overshadows any benefit of allowing more than 93,512 individuals to pursue their own cases.

The Settlement provides Settlement Class Members with certain relief and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Member to object or request exclusion. Moreover, there is no indication that Settlement Class Members have an interest in individual litigation or an incentive to pursue their claims individually, given the number of damages likely to be recovered, relative to the resources required to prosecute such an action.

Adjudicating individual actions here is impracticable: the amount in dispute for individual Class Members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. In no case are the individual amounts at issue sufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Instead, the individual prosecution of Settlement Class Members' claims would be prohibitively expensive, and, if filed, would needlessly delay resolution and lead to inconsistent rulings. Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved, and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620. Therefore, the Court should certify the Settlement Class under Rule 23(b)(3).

**D. The Court Should Preliminarily Approve the Proposed Settlement.**

After it is determined provisional certification of the Settlement Class is appropriate, the Court must determine whether the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) and the corresponding factors set forth in *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)—the "*Bennett* Factors." The Bennett Factors are as follows:

there was no fraud or collusion in arriving at the settlement and ... the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986.

### 1. Fed. R. Civ. P. 23(e)(2)(A): Plaintiffs and Class Counsel have Adequately Represented the Class.

The first factor heavily weighs in favor of granting preliminary approval because both Class Counsel and Plaintiffs have adequately represented the Class. Class Counsel have adequately represented the Class by fully investigating the facts and legal claims; preparing the complaints; briefing an opposition to Defendant's motion to dismiss; requesting, obtaining, and reviewing informal discovery from Mercer; drafting a comprehensive mediation statement assessing the legal and factual strengths and weaknesses of the case; and participating in mediation and a lengthy negotiation process. (Joint Decl., ¶¶ 7–9, 13–14). Additionally, Plaintiffs have also demonstrated their adequacy by: (i) selecting well-qualified Class Counsel; (ii) producing information and documents to Class Counsel to permit investigation and development of the pleadings; (iii) being available as needed throughout the litigation; and (iv) monitoring the litigation. Thus, this factor weighs in favor of granting preliminary approval. (*Id.* ¶ 18).

### 2. Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length.

The proposed settlement was negotiated at arm's length, without collusion, and with the assistance of a qualified and respected mediator, Bruce Friedman (the "Mediator"). (*Id.* ¶ 8). As part of the mediation process, the Parties exchanged and provided the Mediator with detailed mediation statements outlining the strengths and weaknesses of their claims and defenses and exchanged informal discovery. (*Id.* ¶ 14). The fact that the Settlement was achieved through well-

informed, arm's-length, neutrally supervised negotiations weigh in favor of granting preliminary approval under Rule 23(e)(2)(B).

### 3. Fed. R. Civ. P. 23(e)(2)(C)(i) and *Bennett* Factors 1–4: the Relief Provided is Adequate.

When considering the likelihood of success at trial, the complexity, expense, and duration of the litigation, the relief provided is exceptionally reasonable. Simply put, this case could drag on for years. Pre-trial litigation would be extensive, with voluminous discovery needed from Mercer and any third-party companies that Mercer has used in an information technology capacity. Experts would be required to testify regarding Mercer's data security practices, industry standard practices, and how its practices deviated therefrom. Substantial fact-finding would be required into what information was taken, how, and what impact this had and will have on the Settlement Class. Plaintiffs would need to survive potential dispositive motions and prevail on a motion for class certification. Such motion practice, and potential appeals, could consume years, during which the law could change and threaten their claims. Given the complexity of the claims and arguments here, a lengthy trial would follow. Litigation would be extraordinarily complex, and it could take several years for the Class to see any real recovery, if any at all. Thus, the anticipated potential litigation here favors approval.

Plaintiffs are confident in their claims, however, as is true in all complex class actions, there is risk here—and this area of law is especially risky. Data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *2–4 (S.D.N.Y. June 25, 2010) (collecting cases); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). Thus, given this risk and uncertainty, settlement is the more prudent course when a reasonable one can be reached.

In light of the above, the un-capped claims made settlement achieved, and the benefits Settlement Class Members are eligible to receive is an outstanding result. (Federman Decl.,¶ 16). The Settlement reached here has a higher per person value than the typical data breach settlement. *See In re The Home Depot, Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583 (N.D. Ga. Mar. 7, 2016) (approximately $0.51 per class member) and those regularly approved elsewhere. *See In re Target Customer Data Sec. Breach Litig.*, No. MDL 14-2522 (D. Minn. Mar. 18, 2015) ($0.17 per class member); *Hymes v. Earl Enterprises Holdings*, Inc., No. 6:19-CV-644-CEM-GJK, 2021 WL 1781461 (M.D. Fla. Feb. 10, 2021) (settlement fund of only $650,000 and coupons for approximately 2.15 million individuals). The above cases underscore the exemplary resolution for the Settlement Class achieved here.

4. **Fed. R. Civ. P. 23(e)(2)(C)(ii)–(iv) and Fed. R. Civ. P. 23(e)(2)(D): the effectiveness of any proposed method of distributing relief to the class, the terms of any proposed award of attorney's fees, including timing of payment, any agreement required to be identified under Rule 23(e)(3)[3] and class members are treated equitably relative to each other.**

The method of distributing the settlement benefits will be equitable and effective. As explained above, all Class Members are eligible to make a claim for Ordinary Out-of-Pocket Losses, Attested Time, Extraordinary Out-of-Pocket Losses, and Credit Monitoring. (SA, § 2.1.1–2.1.3). The task of validating those claims will be delegated to the Settlement Administrator, a neutral party that has significant experience processing these claims in similar cases. (*Id.* § 9). The only difference in treatment among Class Members is that those who incurred and submit a claim for Out-of-Pocket Losses, Extraordinary Out-of-Pocket Losses, and Attested Time Claims will appropriately and equitably receive payments in proportion to the amount of their losses.

---

[3] Other than the Settlement Agreement, there are no other agreements required to be identified under Rule 23

Additionally, and if approved by the Court, the named Plaintiffs will receive a Service Award not to exceed $1,500 for their service as Class Representatives, which Courts have allowed in diversity jurisdiction cases such as this following the Eleventh Circuit's decision in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260–61 (11th Cir. 2020). *See Arnold v. State Farm Fire & Cas. Co.*, No. 2:17-CV-148-TFM-C, 2023 WL 7308098, at *1 (S.D. Ala. Nov. 6, 2023) ("The Court agrees with its several sister courts in this Circuit that *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), is inapplicable in diversity jurisdiction cases where the underlying claims arise under state law.").

Furthermore, Mercer will pay the attorneys' fees, costs, and expenses incurred by Class Counsel up to a total of $300,000, completely separate and apart from the benefits made available to the Settlement Class. This request, if granted, will not affect the relief made available to the Class under the Settlement Agreement.

**5. *Bennett* Factor 5: the Substance and Amount of Opposition to the Settlement.**

This cannot be discerned at this time because notice has not yet been given to the Class.

**6. *Bennett* Factor 6: the Stage at Which the Settlement was Achieved.**

Although the Parties reached a Settlement before the end of the discovery period, Class Counsel made an informed decision regarding the appropriateness of settlement. Prior to negotiating the Settlement, Class Counsel sought informal discovery from Mercer on a number of topics, including: the number of individuals whose PII was potentially compromised during the Data Incident; the types of PII potentially compromised; the mechanics of the Data Incident; the remedial actions Mercer took after the Data Incident; and the terms of any potentially applicable insurance coverage. (Federman Decl., ¶ 13). Class Counsel thoroughly evaluated the discovery they received in their analysis of damages. (*Id.* ¶ 14). Through the above process and the mediation,

17

Class Counsel came to understand the size of the Settlement Class, the issues at hand, and obtain an excellent settlement for Settlement Class Members. Thus, the Court should find that Class Counsel conducted sufficient fact-finding even at this early stage in the litigation.

*      *      *

For the reasons stated above, the Settlement is fair, adequate, and reasonable and should be preliminarily approved.

## VI.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN.

After the Court determines it will "likely be able to" approve the settlement, it must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Class members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.*  The notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The proposed notice program meets all of the requirements delineated above. Here, the Parties have agreed to a robust notice program to be administered by Epiq, a well-respected third-party administrator. Defendant will provide Epiq, to the extent available, the name and last known physical mailing address of each Settlement Class Member. (SA § 9). Epiq will use that information to send direct notice to the Settlement Class Members. (*Id.* § 4.3, Exhibit B (Long

Form Notice), Exhibit C (Postcard Notice)). The Notice and Claim Forms are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions regarding how to make a claim, object to the Settlement, or opt-out of the Settlement. (*See id.* at Exhibit A (Claim Form), Exhibit B (Long Form Notice), Exhibit C (Postcard Notice)). In addition to direct notice, Epiq will also establish a dedicated Settlement Website where Settlement Class Members may view and download the Short Notice, Postcard, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement and Plaintiffs' Motion for Attorney Fees, Litigation Costs, and Service Award. (*Id.* § 1.29). Because the notice plan ensures that Settlement Class Members' due process rights are protected the Court should approve the notice plan and direct that notice be disseminated to the Settlement Class.

## VII.    CONCLUSION

For the reasons set forth above, Plaintiffs' respectfully request the Court grant Plaintiffs' Unopposed Motion for Preliminary Approval and: (i) preliminarily certify the proposed Settlement Class; (ii) preliminarily approve the proposed Settlement; (iii) approve the proposed notice plan; (iv) order notice of the Settlement be issued to the Settlement Class; and (v) set a date for a final approval hearing.

Date: November 14, 2024                    Respectfully submitted,

*/s/: William B. Federman*
William B. Federman
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
wbf@federmanlaw.com

Kevin Laukaitis
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518

19

San Juan, PR 00907
Telephone: (215) 789-4462
klaukaitis@laukaitislaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/: William B. Federman*
William B. Federman